IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **SUPERIOR WATER AND AIR, INC.**, a Utah corporation,<br><br>　　　　　　　　**Plaintiff**,<br><br>vs.<br><br>**PURONICS, INC.**, a California corporation, and **GE IONICS, INC.**, a Massachusetts corporation,<br><br>　　　　　　　　**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:07CV838 DAK |

　　　　This matter is before the court on Defendant Puronics, Inc.'s ("Puronics") Motion to Dismiss and on Defendant GE Ionics, Inc.'s ("Ionics") Motion to Dismiss.  A hearing on the motions was held on March 31, 2008.  At the hearing, Puronics was represented by John A. Pearce and Andrew H. Stone.  Ionics was represented by David M. Bennion, and Plaintiff Superior Water and Air, Inc. ("Superior") was represented by Mary Anne Q. Wood and Darryl J. Lee.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND[1]

Superior provides water softening systems to retail, commercial, and residential clients located in the State of Utah.  On or about February 27, 2004, Superior began buying and installing systems made and sold by Ionics.  In or about May 2006, Ionics sold its Consumer Water Group, which included the manufacture and sale of the products purchased by Superior, to Puronics.  Subsequent to that May 2006 sale date, Superior continued to purchase water softening systems from Puronics, which Superior believes were then manufactured by Puronics.

Ionics and Puronics have referred to Superior as a distributor of their water softener systems, Superior referred to itself as a distributor of the Ionics/Puronics water softener systems, and the parties allegedly negotiated an oral distributorship agreement (the "Distributorship Agreement"), the terms of which involved the purchase and sale of Defendants' water softener systems and the course of dealing and the course of performance of the parties.

Pursuant to the terms of the parties' alleged oral Distributor Agreement, Defendants provided Superior with water softener systems.  Superior paid for these systems and installed them in the homes of Superior's residential customers.  If any of these water softener systems failed, Defendants would replace the defective system, pay for shipment of the defective parts to Defendants' plants, and pay for the return shipment of the replacement parts from Defendants to Superior.  Defendants would also pay Superior for the cost of labor to remove the defective part and install the new part.

---

[1] The following "facts" are taken from Superior's Complaint and are assumed to be true for purposes of these motions to dismiss.

On or about July 1, 2007, Puronics purported to terminate Superior as a distributor of its water conditioner systems because Puronics believed that Superior had allegedly breached a separate Merchant Financing Agreement entered into between Superior and a wholly-owned subsidiary of Defendants on or about August 26, 2006.  Under the terms of the Financing Agreement, Superior was obligated to provide Puronics with a right of first refusal to acquire financing contracts from customers buying Puronics water softening systems from Superior.  Puronics determined that Superior was failing to sell Puronics the financing contracts obtained from its customers for the purchase of Puronics' water softening systems, as per the terms of the Financing Agreement.

Superior claims that Defendants have recently notified Superior that they will not pay for the shipping cost to send the defective tanks back to Defendants or the shipping costs to send replacement tanks to Superior.  Also, Defendants have now refused to pay the cost of labor to remove their defective tanks and to install the replacement tanks and have refused to fill replacement tanks with resin.  This, Superior claims, is in breach of the parties' contract and course of performance and course of dealing.

Superior has installed approximately 2,000 Ionics/Puronics water softener systems.  Of these systems, approximately 150 have failed to date because of leaking tanks.  Superior believes that the stainless steel tanks in all 2,000 of the water softener systems which Superior has installed are defective and will require replacement immediately or in the near future.  In order to preserve the goodwill of its customers, Superior claims that it will have no choice but to replace these tanks which Defendants manufactured and which are defective and

3

unmerchantable.  Superior alleges that this is in breach of the parties' contract and course of performance and course of dealing.

In its Complaint, Superior has alleged six Causes of Action against Defendants: 1-Breach of Warranty,  2-Breach of Contract; 3-Declaratory Judgment; 4-Specific Performance; 5-Tortious Interference; and 6-Illegal Tying Agreement in Violation of Antitrust Laws.  Ionics and Puronics have moved to dismiss the Second through Sixth Causes of Action but have not moved to dismiss Superior's Breach of Warranty claim.  Through the briefing process, Superior has clarified that it did not intend to assert a claim against Ionics for Tortious Interference (Fifth Cause of Action), and thus, it has agreed to dismiss that claim as against Ionics.

## DISCUSSION

### A.  Claims Based on an Alleged Oral Contract (Causes of Action 2-4)

Puronics contends that Superior's claims for breach of contract, specific performance, and declaratory judgment fail because Superior's alleged oral contract falls squarely within the UCC and the Utah Statute of Frauds.  In addition, Puronics contends that Superior's contract (and tortious interference) claims necessarily fail because Superior has now, through the briefing process, clarified that there was no specific term specified in the alleged oral contract, and it is well established that contracts with terms of indefinite duration are terminable at will, and without cause, by any party thereto.  *See*, *e.g.*, *Trace Minerals Research v. Mineral Res. Int'l, Inc.*, 505 F. Supp. 2d 1233, 1241 (D. Utah 2007) (holding no breach of licensing agreement because "[a] license containing no time frame is generally terminable at will"); *see also* 17A Am. Jur. 2d Contracts § 531 ("[S]ome contracts that mention no period of duration are construed as

terminable at will; for instance, this is generally true of a contract for services which does not specify its duration."); 67 Am. Jur. 2d Sales § 343 ("Thus, a franchise or distributorship contract that does not specify any duration is terminable at will, upon reasonable notice, and without cause."); 17B C.J.S. Contracts § 439 ("[W]here no time limitation is inserted in a contract for the performance of services, or the furnishing of commodities, the contract is regarded as terminable by either party . . . ."). For this reason, Puronics argues, the claims fail even if the Agreement is not governed by the UCC.

Ionics joins in Puronics' arguments and also claims that alleged misconduct for which Superior seeks damages occurred after GE Ionics sold its consumer water business to Puronics, so it cannot be liable.

Superior, however, argues that it would be premature for the court to dismiss the claims based on the alleged oral contract. It argues that because the alleged "agreement" was partially performed, the statute of frauds does not apply.[2] Superior also disagrees with Ionics' contention that the alleged misconduct pertains to events taking place after Ionics' sale of its consumer water business to Puronics.

The court agrees with Superior that it would be premature to dismiss these claims (Causes of Action 2-4) prior to discovery. While Defendants may very well be correct that (1) the UCC and/or the Utah Statute of Frauds bars these claims based on an alleged oral agreement, and/or (2) that Superior's claims fail because such a contract that does not specify any duration is terminable at will, upon reasonable notice, and without cause, the court declines to dismiss these

---

[2] Puronics argued that the "part performance"exception to the Statute of Frauds applies only to real estate actions, but Superior did not respond to that argument.

claims at this early juncture.  The court notes, however, that Superior did not respond at oral argument to Defendants' persuasive argument concerning the indefinite term of the alleged oral contract, and thus the court urges Superior to carefully evaluate Defendants' arguments before further pursuing these claims based on an alleged oral agreement.

**B.  The Tortious Interference Claim (Fifth Cause of Action)**

Superior also alleges that Puronics' breach of the alleged oral agreement tortiously interfered with Superior's contracts with its customers.[3]  Puronics, however, argues that Superior has not properly plead either an "improper means" or "improper purpose" to support such a claim.  A breach of a contract—the only interference Superior alleges—does not constitute improper means as a matter of law.  Moreover, Superior has not alleged, as required when pleading an improper purpose, that Puronics' predominant purpose in acting was to injure Superior.

There are three elements to a tortious interference claim:

> A plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff.

*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).  "A deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an 'improper means.'"  *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 309-11 (Utah 1982) (emphasizing that, to constitute improper means, breach must be for purpose of injuring party, not merely obtaining relief from obligations under contract); see also *B.J. Barnes & Sons*

---

[3] As stated above, this claim is dismissed as against Ionics.

*Trucking v. Dairy Farmers of Am., Inc.*, No. Civ. 2:05-CV-351BSJ, 2006 WL 1472689, at **6-9 (D. Utah May 22, 2006). Rather, "[i]mproper means are present 'where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules.'" *St. Benedict's*, 811 P.2d at 201 (quoting *Leigh Furniture*, 657 P.2d at 307). "Improper means include 'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood,'" or the violation of an 'established standard of a trade or profession.'" *Id*. (citation omitted).

The court agrees with Puronics that Superior's claim for tortious interference fails. Superior has failed to plead an improper means or improper purpose. Superior's allegations, even if true, go to breach of contract and do not establish an extra-contractual tort, and thus this claim is dismissed without prejudice. .

**C.  The Antitrust Claim (Sixth Cause of Action)**

Superior alleges an illegal tying agreement in violation of antitrust law, specifically that Defendants have illegally tied the purchase of the water softening systems to Superior's obligation to provide Defendants with the right of first refusal to acquire the financing contracts.

Puronics argues that Superior fails to identify the relevant market, both in product and geographical terms, that Superior also fails to plead that Puronics has appreciable economic power in the tying product market, and that Superior fails to allege that the alleged arrangement affects a substantial volume of commerce in the tied market. In addition, Puronics argues that while Superior argues that Puronics' water softeners constitute a unique tying product, Superior

7

Case 2:07-cv-00838-DAK   Document 28   Filed 06/30/08   Page 8 of 10

does not account in its pleading, as it is required to do, for products of reasonable interchangeability or rough equivalence, namely, other water softeners.  According to Puronics, Superior's own allegations demonstrate the interchangeability of these products.   Furthermore, Superior does not plead, nor can it plausibly plead, that Puronics' alleged market power has any substantial potential for impact on competition in the immense market of finance contracts.  Furthermore, Ionics contends that these activities, even if taken as true, do not constitute a tying arrangement.   Thus, according to Defendants, the illegal tying claim must be dismissed.

      For all the above reasons, Defendants are correct that Superior's Antitrust claim fails.  Superior fails to identify the relevant market, both in product and geographical terms, it has failed to plead that Puronics has appreciable economic power in the tying product market, and it fails to allege that the alleged arrangement affects a substantial volume of commerce in the tied market.  In addition, while Superior argues that Puronics' water softeners constitute a unique tying product, Superior does not account in its pleading for products of reasonable interchangeability or rough equivalence, namely, other water softeners.   It has also not plead that Puronics' alleged market power has any substantial potential for impact on competition in the immense market of finance contracts.

      Even if Superior could overcome the above deficits, Superior still does not allege an illegal tying claim.  A tying arrangement is an "agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Systemcare, Inc. v. Wang Laboratories Corp.,* 117 F.3d 1137, 1139 (10th Cir. 1997); *Northern Pac. Ry. Co. v. United*

8

*States*, 356 U.S. 1, 5-6 (1958). Where the buyer is free to take either product by itself there is no tying problem. *Id*. Here, Superior does not allege that its purchase of the tanks was contingent on its purchase of another product from the Defendants. Instead, it alleges that its purchase of the tanks was contingent upon Superior providing Defendants with the right of first refusal if Superior sold its financing agreements. Thus, Superior has not alleged that Defendants have forced Superior to purchase a tied product with its purchase of the water systems. Moreover, even if Superior did provide the right of first refusal to Defendants, this right is still only a contractual option. In a scenario wherein Superior decided not to sell a financing agreement, its purchase of a tank from the Defendants could never be conditioned upon the sale of the financing agreement. Therefore, Superior has not alleged it was forced to buy a tied product together with the water system, and Superior's allegations of an illegal tying arrangement fails to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, for the foregoing reasons, Puronics' Motion to Dismiss [docket # 9] is GRANTED in part and DENIED in part. Superior's claim against Puronics for Tortious Interference (Fifth Cause of Action) is DISMISSED without prejudice, and its Illegal Tying in Violation of Anti-Trust Laws (Sixth Cause of Action) is DISMISSED with prejudice.

In addition, Ionics' Motion to Dismiss [docket # 12] is GRANTED in part and DENIED in part. Superior has conceded that it did not intend to assert a claim for Tortious Interference against Ionics, and thus, the Fifth Cause of Action against Ionics is DISMISSED without prejudice, and the Illegal Tying claim (Sixth Cause of Action) against Ionics is DISMISSED with

prejudice.

      DATED this 30th day of June, 2008.

                              BY THE COURT:

                              _____
                              DALE A. KIMBALL
                              United States District Judge